IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. MCGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-1027-WKW |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michael McGuire's Alabama homecoming was not as sweet as he expected.  Upon his arrival, Plaintiff – who was convicted of sexual assault in Colorado in 1986 – was required to register as a sex offender.  This suit resulted.  In his Third Amended Complaint (Doc. # 74), Plaintiff challenges the constitutionality of the registration requirements, the lack of a pre-deprivation due process hearing, and his treatment at the hands of the Montgomery Police.  Defendants move to dismiss Plaintiff's Amended Complaint, arguing that he fails to state a claim on which relief can be granted.  (Docs. # 78, 80, 83, 86.)  Upon careful consideration of the arguments of counsel and the relevant law, the motions are due to be granted in part and denied in part.  Only Plaintiff's claim premised on a violation of the *Ex Post Facto* Clause survives.

# I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 2201.  The parties do not contest personal jurisdiction or venue, and allegations sufficiently support both.

# II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard articulated by Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While detailed factual allegations are unnecessary, it is not enough for a plaintiff to allege that he is entitled to relief; he must plead facts that "permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "eliminate any allegations in the complaint that are merely legal conclusions" and assume the veracity of well-pleaded factual allegations, construing them in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290

(11th Cir. 2010); *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The court need not, however, accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## III.  BACKGROUND

### A.    Factual History

Plaintiff's troubles started in 1986, when a Colorado jury convicted him of sexual assault. Plaintiff served three years in a Colorado prison, and upon his release, the State of Colorado did not require him to register as a sex offender.

More than twenty years later, in April 2010, Plaintiff returned to his hometown, Montgomery, Alabama, to live and work near his extended family. Aware of Alabama's tough sex offender laws, Plaintiff visited the Montgomery Police Department on April 14, 2010, to confirm his belief that his Colorado conviction would not subject him to those laws. (Am. Compl. ¶ 18.) His visit was not a short one, and the police did not share his belief.

In his first hour at the police station, Plaintiff responded to detectives' questioning regarding his Colorado conviction. He then asked if he could leave, hoping the detectives could contact him later to inform him of their findings. The detectives would not allow him to leave the building and kept Plaintiff in custody in the Special Victims Unit of the Montgomery Police Department for several hours.

Before allowing Plaintiff to leave, police personnel fingerprinted and photographed him and required him to register as a sex offender. They informed Plaintiff he had five days to move from his mother's address to a compliant address and that he had to register with the Montgomery County Sheriff's Department immediately.

Weeks later, Plaintiff went to the Montgomery County Sheriff's Office, where he endured similar warnings regarding compliance with Alabama's sex offender registration laws and faced the same insistence that he was subject to those laws. Sheriff's Department employees photographed, fingerprinted, and drew DNA from Plaintiff.

Since April 2010, Plaintiff has been subject to the requirements of Alabama's sex offender registration laws. In May 2010, Plaintiff's name and address, as well as information regarding his Colorado conviction went "live" on the Alabama sex offender registry website. The next month, a community notification flyer, distributed by mail and other means, warned of Plaintiff's presence in Montgomery.

Plaintiff received no due process hearing prior to the determination his Colorado conviction subjected him to Alabama's registration laws. Four days after his first meeting with Montgomery Police in April 2010, Plaintiff met with Department detectives again and requested a due process hearing. He was told that

4

the Department would arrange for one immediately.

Eighteen months later, in October 2011, Plaintiff called the Alabama Department of Public Safety ("ADPS") and inquired about his entitlement to a due process hearing. Plaintiff learned that month from an ADPS attorney that the agency had denied his request for a hearing and informed the Montgomery Police Department of that denial many months earlier.

In November 2011, after Plaintiff filed suit in state court challenging the requirements of registration, he received notice from a state administrative law judge informing him of a hearing to determine whether his Colorado conviction subjected him to Alabama's registration requirements. A post-deprivation hearing occurred on December 14, 2011, less than two weeks after Plaintiff filed suit in this court. In January 2012, the administrative law judge ruled that Plaintiff's Colorado conviction made him subject to Alabama's existing laws.

## B.   Procedural History

Plaintiff filed suit in this court on December 2, 2011. (Doc. # 1.) One week later, he moved the court for a temporary restraining order to enjoin the December 14, 2011, post deprivation hearing. (Doc. # 6.) The court denied Plaintiff's motion (Doc. # 15), and the next day, Plaintiff filed his First Amended Complaint (Doc. # 16). He later moved for the first time for a preliminary injunction (Doc. # 32).

The first round of motions to dismiss came in quick succession. (Docs. # 29, 35, 39, 40, 42.)  In an apparent response to arguments raised therein, Plaintiff voluntarily dismissed his claims against a number of Defendants.[1]  (Docs. # 48, 49.) Plaintiff then sought leave to file his Second Amended Complaint, which the court granted.  (Docs. # 50, 64, 66.)

After a status conference with the parties and the court, the court gave Plaintiff fourteen days to consider amending his complaint a third time.  (Doc. # 71.)  Plaintiff did so, and sixty-nine days after his first complaint, Plaintiff filed his Third Amended Complaint (Doc. # 74 ("Amended Complaint" or "Am. Compl."))  and his second motion for a preliminary injunction (Doc. # 99).  This, the fourth iteration of Plaintiff's complaint, is the one currently before the court.

## IV. DISCUSSION

In this Amended Complaint, Plaintiff brings twelve causes of action under state and federal law seeking damages and injunctive relief against six Defendants.  Each count incorporates every antecedent allegation by reference and almost every count

---

[1] Plaintiff dismissed his claims against the City of Montgomery Police Department and four affiliated detectives, the Montgomery County Sheriff's Department and one of its deputies, an attorney with the Alabama Department of Public Safety, and United States Attorney General Eric Holder.  (Doc. # 48.)  His Amended Complaint states a claim against the City of Montgomery, Montgomery Police Chief Kevin Murphy, Montgomery Mayor Todd Strange, Montgomery County Sheriff D.T. Marshall, Director of the Alabama Department of Public Safety Hugh McCall, and Alabama Attorney General Luther Strange.  (Am. Compl. ¶¶ 3–10; Doc. # 88 (voluntarily dismissing claims against the Alabama Department of Public Safety).)

names all Defendants without differentiation, creating a bewildering maze of allegations. Defendants, rather than moving for a more definite statement under Rule 12(e), moved to dismiss Plaintiff's complaint.[2]  In the end, only Plaintiff's *Ex Post Facto* claim survives, and only with regard to the most recent iterations of Alabama's sex offender registration laws.

**A.   Plaintiff has stated a claim that Alabama's sex offender registration laws violate the *Ex Post Facto* Clause.**

1.   <u>Evolution of Relevant Statutory Law</u>

In 1967, Alabama's first laws requiring the registration of sex offenders took effect. 1967 Ala. Acts, No. 507 ("Act 507"). Codified at §§ 13A-11-200–03, the laws required those convicted in any federal or state court – in Alabama or elsewhere – of acts "of sexual perversion"[3] to register with the sheriff in the registrant's county of legal residence. Ala. Code § 13A-11-200 (1982 & Supp. 1986). The law required county sheriffs to maintain a roster of registered sex offenders in their respective

---

[2]  Defendants' motions to dismiss "were comprehensible in a literal sense," but because they addressed the Amended Complaint as a whole "they were, as a practical matter, as vague and ambiguous" as the Amended Complaint. *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001) (discussing a shotgun answer which followed a shotgun complaint).

[3]  Under Act 507, a conviction for "generally any act of sexual perversion involving a member of the same or the opposite sex, or any sexual abuse of any member of the same or the opposite sex or any attempt to commit any of these acts" would subject one to registration. Ala. Code § 13A-11-200 (1982 & 1986 Supp.). Act 507 enumerated sex offenses under Alabama law and provided that conviction for any of the enumerated offenses automatically subjected one to registration. The enumeration, however, did not "limit[] the generality of the above statement" regarding acts of sexual perversion. *Id.*

counties and transmit that information to the State Department of Public Safety, which would maintain a statewide roster. *Id.* at §§ 13A-11-201–02.  Both rosters were open only to "duly constituted law enforcement officers."  *Id.*  This was the law at the time of Plaintiff's 1986 conviction in Colorado.

By 2010, when Plaintiff returned to Alabama, the consequences of his offense had changed.[4]  The law still required those convicted of enumerated "criminal sex offenses" to register and specified that it applied to crimes committed in any jurisdiction that, if committed in Alabama, would constitute one of the enumerated offenses.  Ala. Code § 15-20-21(4)(*l*) (2010 Supp.).  But in addition to requiring registration with local law enforcement, the law prohibited registrants from living or working within a certain radius of schools, universities, childcare facilities, or other like establishments.  *Id.* at § 15-20-26.  And though the information was not publicly accessible, the law required law enforcement to notify those living within a certain radius of a registrant of that registrant's presence and conviction via a community notification flyer.  *Id.* at § 15-20-25.

In 2011, after Plaintiff moved to Alabama but before he filed this suit, the law changed again with passage of the Alabama Sex Offender Registration and

---

[4]  The law changed most dramatically in 1996, with the passage of the Community Notification Act.  1996 Ala. Acts, No. 793 ("CNA").

Community Notification Act ("ASORCNA"), which expressly repealed the laws discussed above. 2011 Ala. Acts, No. 640. ASORCNA's provisions apply to those convicted of enumerated sex offenses under Alabama law, as well as those convicted in another jurisdiction of a crime that, "if it had been committed in [Alabama] under the current provisions of law, would constitute" one of the enumerated offenses. Ala. Code § 15-20A-5(33).

Like its predecessor, ASCORNA restricts where a registrant may live or work,[5] *id.* at §§ 15-20A-11, 15-20A-13, requires the distribution of community notification flyers to those living near the registrant's residence, *id.* at § 15-20A-21, and provides for a "public registry website maintained by the Department of Public Safety" which

---

[5] ASORCNA prohibits registrants from living within 2,000 feet of property containing "any school or childcare facility," and from living within 2,000 feet of the registrant's former victim or the victim's immediate family. Ala. Code § 15-20A-11(a), (b). It also prohibits registrants from sharing a residence with a minor, unless the registrant is "the parent, grandparent, stepparent, sibling, or stepsibling of the minor." *Id.* at § 15-20A-11(d). If, however, any of the registrant's victims were the registrant's "minor children, grandchildren, stepchildren, siblings, or stepsiblings," or any other child, the exemption for living with family members will not apply. *Id.*

ASORCNA also prohibits registrants from working or volunteering "at any school, childcare facility, or mobile vending business that provides services primarily to children, or any other business or organizations that provides services primarily to children." *Id.* at § 15-20A-13(a). Additionally, no registrant may work "within 2,000 feet of the property on which a school or childcare facility is located" or "within 500 feet of a playground, park, athletic field or facility, or any other business having a principal purpose of caring for, educating, or entertaining minors." *Id.* at § 15-20A-13(c). The employment provisions – like most of the residency restrictions outlined above – apply with equal force whether the registrant's former victim was a minor.

includes information[6] on each registrant, *id.* at § 15-20A-8. Registrants must "appear in person to verify all required registration information" quarterly. *Id.* at § 15-20A-10(f). The law requires each registrant to "obtain, and always have in his or her possession," "a driver license or identification card bearing a designation that enables law enforcement officers to identify the licensee as a sex offender." *Id.* § 15-20A-18(a), (d). ASORCNA also prohibits registrants from changing their names "unless the change is incident to a change in the marital status of the sex offender or is

---

[6] At § 15-20A-8(a), ASORCNA specifically provides for online publication of information on the registrant, to include:

(1)      Name, including any aliases, nicknames, ethnic, or tribal names.

(2)      Address of each residence.

(3)      Address of any school the sex offender attends or will attend. For purposes of this subdivision, a school includes an educational institution, public or private, including a secondary school, a trade or professional school, or an institution of higher education.

(4)      Address of any employer where the sex offender works or will work, including any transient or day laborer information.

(5)      The license plate number and description of any vehicle used for work or personal use, including land vehicles, aircraft, and watercraft.

(6)      A current photograph.

(7)      A physical description of the sex offender.

(8)      Criminal history of any sex offense for which the sex offender has been adjudicated or convicted.

(9)      The text of the criminal provision of any sex offense of which the sex offender has been adjudicated or convicted.

(10)    Status of the sex offender, including whether the sex offender has absconded.

It specifically excludes from publication a registrant's: "(1) Criminal history of any arrests not resulting in conviction; (2) Social Security number; (3) Travel and immigration document numbers; (4) Victim identity; and (5) Internet identifiers." *Id.* at § 15-20A-8(b).

necessary to effect the exercise of the religion of the sex offender." *Id.* at § 15-20A-36.

Additionally, ASORCNA requires registrants who intend to be away from their county of residence for three or more consecutive days to "report such information in person immediately prior to leaving" and complete a travel permit form providing "the dates of travel and temporary lodging information." *Id.* at § 15-20A-15(a), (b).  The permit form explains the duties of the registrant regarding travel, and registrants must sign the form, acknowledging their duties, or "the travel permit shall be denied." *Id.* at § 15-20A-15(d).  When a registrant obtains a permit, the registrant's local sheriff must "immediately notify[] local law enforcement" where the registrant will travel. *Id.* at § 15-20A-15(e).

### 2.   Plaintiff's *Ex Post Facto* Challenge

Count IV of Plaintiff's Amended Complaint alleges Alabama's sex offender registration laws[7] violate the *Ex Post Facto* Clause when applied to registrants

---

[7] Plaintiff argues application of all three iterations – Act 507, CNA, and ASORCNA – violate his *Ex Post Facto* rights.  The court will focus on the most recent law, ASORCNA, for two reasons.  First, subjecting Plaintiff to Alabama's Act 507 – the state's original sex offender registration law in effect when Plaintiff committed rape in Colorado in 1986 – simply could not pose an *Ex Post Facto* problem.  There is nothing retroactive about applying a law that was in effect at the time Plaintiff committed the assault for which he was convicted.  Second, the parties have focused on ASORCNA.  Though the CNA applied retroactively to Plaintiff for some months upon his arrival, it has since been repealed.  Plaintiff is no longer at risk of it being retroactively applied to him; thus ASORCNA is the proper target for analysis.

convicted before the laws' effective dates.  (Am. Compl. ¶¶ 105–07.)  Plaintiff has

stated a claim for relief, and Defendants' motions are due to be denied with respect

to the *Ex Post Facto* claim.

The United States Constitution prohibits states from passing any "*ex post facto*

Law."  U.S. Const. Art. I, § 10.  The *Ex Post Facto* Clause prohibits criminalizing

conduct retroactively – "mak[ing] an action, done before the passing of the law, and

which was innocent when done, criminal."  *Calder v. Bull*, 3 U.S. 386, 390 (1798)

(Chase, J.).  In addition to prohibiting retroactive criminalization of the act itself, the

*Ex Post Facto* Clause prohibits increasing punishment for criminal acts after their

commission.  *Id.*

When a statute applies retroactively, a two-step analysis determines whether

that statute violates the *Ex Post Facto* Clause.

> If the intention of the legislature was to impose punishment, that ends the
> inquiry.  If, however, the intention was to enact a regulatory scheme that
> is civil and nonpunitive, we must further examine whether the statutory
> scheme is so punitive either in purpose or effect as to negate [the state's]
> intention to deem it civil.

*Smith v. Doe*, 538 U.S. 84, 92 (2003) ("*Smith*") (internal quotations omitted).  The

Supreme Court of the United States has identified a number of guideposts useful in

the second step of that analysis, when considering whether the effect of a statute is so

punitive that it overwhelms a civil purpose.  Those guideposts ask "whether, in its

necessary operation, the regulatory scheme:  has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  *Id.* at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)).

Beginning at *Smith*'s first step, with legislative intent, circumstances suggest that the legislative intent underpinning ASORCNA was civil, not punitive.  When it enacted ASORCNA, the Alabama legislature intended to protect "vulnerable populations, particularly children."  Ala. Code § 15-20A-2(5).  The Legislature expressly disclaimed that its intent was to punish; rather, it meant "to protect the public and, most importantly, promote child safety."  *Id.*

In addition to the plain language of the statute, "the manner of the statute's classification" is also relevant to determining whether the legislative intent was punitive.  *United States v. W.B.H.*, 664 F.3d 848, 854 (11th Cir. 2011).  ASORCNA is codified in Title 15 of the Alabama Code, the title containing the state's criminal procedures and other nonpunitive, nonsubstantive provisions for the administration of criminal law.  ASORCNA's home in Alabama's criminal procedure code does not "support a conclusion that the legislative intent was punitive."  *Smith*, 538 U.S. at 95 (considering Alaska's registration law and its codification in that state's criminal

procedure code). Thus, the analysis continues to *Smith*'s second step and the *Mendoza-Martinez* guideposts.

*Smith*'s second step asks whether the effect of the law is so punitive that it overwhelms the legislature's civil intent. The "second step is a steep one for those challenging a statute on those grounds." *W.B.H.*, 664 F.3d at 854 (citing *Smith*, 538 U.S. at 92). Courts "ordinarily defer to the legislature's stated intent," *id.*, and statutes enjoy a presumption of constitutionality. *Smith*, 538 U.S. at 110 (Souter, J., concurring). "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92; *see also W.B.H.*, 664 F.3d at 855 ("[S]ome evidence will not do; substantial evidence will not do; and a preponderance of the evidence will not do."). At this stage, the parties have had no opportunity to develop proof – clear or otherwise. Taking the *Mendoza-Martinez* guideposts in turn to analyze ASORCNA's effect, the court finds that Plaintiff's *Ex Post Facto* claim survives Defendants' motions to dismiss.

The first guidepost asks "whether the regulatory regime has been regarded in our national history and tradition as punishment." *W.B.H.*, 664 F.3d at 855. The Supreme Court in *Smith* held that adult sex offender registries, like Alabama's, have not been so regarded. Community notification provisions – which exist to disseminate

14

accurate and public information about criminal convictions – are unlike historic practices such as public shaming and branding, which are unquestionably punitive. *Smith*, 538 U.S. at 98; *see also W.B.H.*, 664 F.3d at 855 (holding that the first guidepost did not indicate that the effect of the federal sex offender registry was punitive).

But at this stage, discovery is necessary to determine whether the residency, employment, and loitering restrictions amount to banishment, another historically punitive practice.[8]  While such restrictions do not literally "expel" registrants from their communities or prevent them from accessing prohibited areas except to live or work, they could have, depending on the facts shown, a practical effect similar to expulsion in some communities.  *Cf. Doe v. Miller*, 405 F.3d 700, 719 (8th Cir. 2005) ("*Miller*") (holding that Iowa's residency restrictions did not amount to a banishment).

The second guidepost asks whether the regulatory scheme "imposes an affirmative disability or restraint." *Smith*, 538 U.S. at 97.  "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Id.* at 100.  ASORCNA does not require confinement, the prototypical form of punitive restraint. *Id.*  And ASORCNA's in-person reporting requirements, while inconvenient for registrants, are

_____

[8]  ASORCNA also prohibits registrants convicted of a sex offense against a minor from loitering within 500 feet of "a school, a childcare facility, playground, park," and other like areas, though that prohibition does not preclude offenders from accessing those areas for "legitimate purpose[s]" other than to live or work.  Ala. Code § 15-20A-17.

not punitive, as they "help law enforcement track sex offenders and ensure that the information provided is accurate." *W.B.H.*, 664 F.3d at 857.

There is, however, a notable difference between ASORCNA and the laws approved in *W.B.H.* and *Smith*. Unlike ASORCNA, the other laws do not actively restrict locations where registrants may live or work. Because convictions are already a matter of public record, a potential employer or landlord could learn of a conviction through a routine background check. *Smith*, 538 U.S. at 101; *W.B.H.*, 664 F.3d at 857. With the benefit of that information, a potential employer or landlord may decide not to hire or rent to a registrant. That choice may even be a likely one, but the choice – under those laws – remains in the hands of the potential employer or landlord. By contrast, ASORCNA's active restriction on where registrants may live or work imposes a direct restraint.

It is also possible that ASORCNA's travel permit requirement amounts to a direct restraint. ASORCNA requires registrants to "complete a travel permit" when they intend to be away from their home county for three or more consecutive days. Ala. Code § 15-20A-15. Without facts shedding light on when and under what circumstances sheriffs can refuse or have refused permits,[9] the court is unable to

---

[9] The statute requires sheriffs to deny permits to registrants who refuse to sign the travel permit form acknowledging their responsibilities while away. Ala. Code § 15-20A-15(d). It is silent on whether or on what other grounds a sheriff may deny a permit.

determine whether such a requirement imposes an affirmative disability or restraint.

The fact that certain provisions may or do impose a direct restraint "does not inexorably lead to the conclusion that the government has imposed punishment." *Kansas v. Hendricks*, 524 U.S. 346, 363 (1997) (internal quotations omitted) (holding that Kansas's civil commitment scheme for sexually violent predators – though it imposed a direct restraint – did not violate the *Ex Post Facto* Clause). The guideposts are "neither exhaustive nor dispositive," *Smith*, 538 U.S. at 97, and they certainly should not be dispositive at this stage, where questions remain.

Consequently, the analysis continues to the third guidepost, which asks whether the law promotes traditional aims of punishment, namely retribution and deterrence. *W.B.H.*, 664 F.3d at 858. The Alabama legislature did not mention retribution but acknowledged deterrence was one purpose of ASORCNA. Ala. Code § 15-20A-2(1) ("Registration and notification laws aid in public awareness and not only protect the community but serve to deter sex offenders from future crimes through frequent in-person registration."). But a deterrent purpose will not necessarily render a registration requirement punitive, and an incidental deterrent effect will not do so either. *Smith*, 538 U.S. at 102. Thus, this court follows the reasoning of the Supreme Court and the Eleventh Circuit when it concludes that ASORCNA's deterrent purpose "is not enough to justify a finding that [its] purpose is punitive" as a matter of law.

*W.B.H.*, 644 F.3d at 858 (citing *Smith*, 538 U.S. at 102).

The fourth – and "most significant" – guidepost asks whether the statute is rationally connected to a nonpunitive purpose. *Smith*, 538 U.S. at 102. Again, the reasoning of the Supreme Court and the Eleventh Circuit is instructive. ASORCNA, like the statutes considered by those courts, embodies the legitimate, nonpunitive aim "of promoting public safety 'by alerting the public to the risk of sex offenders in their community.'" *W.B.H.*, 664 F.3d at 859 (quoting *Smith*, 538 U.S. at 103). The registration requirements, community notification provisions, and residency and employment restrictions are all connected to the civil, nonpunitive aim "of protecting vulnerable populations, particularly children." Ala. Code § 15-20A-2(5).

Finally, the fifth guidepost directs the court to consider whether ASORCNA's requirements are excessive with respect to its nonpunitive purpose. *Smith*, 538 U.S. at 97. This calls for assessment of the law's cumulative impact.

The absence of a particularized risk assessment as to the length of time since the offense or the likelihood of violence or recidivism does not, alone, make ASORCNA excessive and therefore punitive. Alabama, like any other state, has the authority to make a rule of universal classification, "treating 'convicted sex offenders as a class rather than requiring individual determinations of their dangerousness.'" *W.B.H.*, 664 F.3d at 859 (quoting *Smith*, 538 U.S. at 104 (alterations omitted)). The

18

*Ex Post Facto* Clause allows states to make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103.  Nonetheless, the categorical treatment of registrants – failing to differentiate among registrants based on their offense, requiring lifetime registration for all registrants – is one factor to consider when assessing ASORCNA's reasonableness.

The residency and employment restrictions, travel permit requirement, and the lifetime registration period may impose, cumulatively, an onerous and direct restraint. For instance, the work restriction would most likely exclude a registrant from any number of construction trades in all but the most sparsely populated areas, for a registrant could not repair a roof or pour concrete within 2,000 feet of a school or childcare facility.  Nor could a registrant technically drive a work vehicle – a delivery truck, for example – on any public roadway without risking a technical violation and felonious consequences should the registrant cross into the restricted radius.  *See* Ala. Code § 15-20A-13(b) ("No adult sex offenders shall . . . maintain employment . . . within 2,000 feet of the property on which a school or childcare facility is located . . . .").

The Alabama Legislature has determined that 2,000 feet is the appropriate restrictive radius within which registrants may not live or work, and such

determinations are "the sort of task for which the elected policymaking officials of a State, and not the federal courts, are properly suited." *Miller*, 405 F.3d at 715. But the reasonableness of that decision is a determination for the courts.

"The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105. Answering the question of reasonableness requires discovery and a better informed judicial review at summary judgment or trial. Plaintiff is entitled to develop facts on which the court may determine the reasonableness of the restrictions and then weigh reasonableness, among the other *Mendoza-Martinez* guideposts, to determine whether Plaintiff has provided the clearest proof that ASORCNA's punitive effect overwhelms its civil intent.

## B.    Plaintiff received more procedural due process than he was constitutionally due.

Plaintiff claims in Count I that Defendants violated his right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution.[10]   Specifically, Plaintiff argues he was entitled to a hearing before the

---

[10] Plaintiff does not argue that Defendants violated his right to procedural due process as guaranteed by the Alabama Constitution or state statute.

state labeled him a sex offender.[11]  But it is settled law that the right to due process does not entitle a sex offender to a hearing meant to establish a fact that is not material[12] under the applicable statute.  *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 7 (2003) ("*Connecticut DPS*").  Accordingly, Plaintiff has no federal right to a due process hearing unless he can "show that the facts [he seeks] to establish in that hearing are relevant under [Alabama's] statutory scheme."  *Id.* at 8.

The fact of conviction is the *only* relevant fact Plaintiff might have a right to dispute at a due process hearing.  But Plaintiff does not dispute that he was an adult at the time of his offense, and he readily admits he was convicted of a sex offense: "Plaintiff was convicted of sexual assault in the State of Colorado on or about May, 1986."  (Am. Compl. ¶ 12.)  Plaintiff does not dispute the only fact that matters.

Act 507 and the CNA – in effect when Plaintiff moved to Alabama – applied generally to adult sex offenders for life, whether they were convicted of one of the enumerated offenses in Alabama or of a crime in another jurisdiction that, if it had

_____

[11]  Though he now complains he did not receive procedural due process, Plaintiff inexplicably sought to enjoin the post-deprivation hearing he eventually received.  (Doc. # 6.)  Today, Plaintiff maintains that "post-deprivation process is not effective" (Am. Cmpl. ¶ 68), and he insists that "[t]he judgment of the Administrative Law Judge is want of all of the elements of due process."  (Doc. # 97, at 25.)  For reasons that follow, that hearing was more process than Plaintiff was due under the United States Constitution.

[12]  The Supreme Court of the United States in *Connecticut DPS* uses the terms "material" and "relevant" interchangeably, and so will this court.  If there is a distinction, here it is one without a difference.

been committed in Alabama, would have constituted one of the enumerated offenses. Ala. Code §§ 15-20-21(4)(l), 15-20-33(a) (1982 & 1986 Supp.).  Thus, the fact of Plaintiff's adult conviction was the only relevant fact under the law as it existed when he moved to Alabama.  *See Parker v. King*, No. 2:07-CV-624-WKW, 2008 WL 901087, at *20 (M.D. Ala. Mar. 31, 2008) (recognizing "conviction of a criminal sex offense" as "the only relevant fact" under Act 507 and CNA).  It remains the only relevant fact under ASORCNA.  Ala. Code §§ 15-20A-3(a), 15-20A-5(33).

Moreover, the court need not decide whether the conclusion that Plaintiff's Colorado conviction qualified as a sex offense under Alabama law is a relevant fact under Alabama's statutory scheme.  First, it seems doubtful that such a legal determination is a "fact," separate from the fact of conviction, under the meaning of *Connecticut DPS*.  Second, when the State afforded Plaintiff a hearing to determine "if the elements of [his] crime were similar to sex crimes under Alabama law," Plaintiff objected.  (Am. Compl. ¶ 71.)

Although Plaintiff has not identified what he would try to establish at a due process hearing, it seems likely he would raise the same substantive due process challenges he pursues in this lawsuit.  (*See* Am. Compl. ¶ 71 (insisting on a hearing to determine the applicability the CNA to Plaintiff).)  But "such claims must ultimately be analyzed in terms of substantive, not procedural, due process."

22

*Connecticut DPS*, 538 U.S. at 8.  Accordingly, nothing alleged in Plaintiff's Amended Complaint amounts to a violation of procedural due process, so Count I is due to be dismissed for failure to state a claim upon which relief can be granted.  *See United States v. Ambert*, 561 F.3d 1202, 1208 (11th Cir. 2009) (rejecting procedural due process challenge to federal sex offender registration law because challenger did not dispute fact of his conviction).

## C.   Plaintiff's claim that Alabama's sex offender registration laws violate his substantive due process rights fails.

Plaintiff alleges in Count II that Alabama's sex offender registration requirements violate his substantive due process rights by preventing him from traveling freely, marrying and carrying on familial relationships, and by affirmatively stigmatizing him.  Though not exactly a substantive due process argument, Plaintiff argues in the same Count that Alabama has failed to give full faith and credit to the judgment of a Colorado court, thus violating the constitutional prescription found in the Full Faith and Credit Clause.  U.S. Const. Art. IV, § 1.  None of these allegations states a claim entitling Plaintiff to relief.[13]

The substantive component of the Fourteenth Amendment's Due Process Clause "protects fundamental rights that are so implicit in the concept of ordered

---

[13]  In doing so, the court states no opinion whether another registrant, pleading more or different facts, could raise a colorable claim for relief that ASORCNA violates these or other constitutional rights.

liberty that neither liberty nor justice would exist if they were sacrificed." *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) ("*Moore*") (internal quotations omitted). A state may only infringe a fundamental right when it narrowly tailors its action to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 302 (1993). When state action does not implicate a fundamental right, it need only bear a rational relationship to a legitimate government interest. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

     1.    <u>Right to Travel</u>

While the Supreme Court has been reluctant to expand substantive due process by recognizing new fundamental rights, it has recognized some special liberty and privacy interests implicit in the Constitution. *Moore*, 410 F.3d at 1343 (citing *Glucksberg*, 521 U.S. at 720). Though "the constitutional right to travel from one state to another is firmly embedded in our jurisprudence," *Saenz v. Roe*, 526 U.S. 489, 499 (1999) (internal quotations omitted), the restriction imposed by Alabama's law does not support Plaintiff's claim that the law infringes on the right to travel.[14] A state may not unreasonably burden a person's right to (1) enter and leave that state, (2) be treated fairly when temporarily present in another state, or (3) be treated the same as

----

[14]  The Supreme Court of the United States has not identified the textual source of the right to interstate travel. *Saenz*, 526 U.S. at 501. Thus, Plaintiff's claim may not be a substantive due process one after all.

other citizens of a state when moving there permanently.  *Moore*, 410 F.3d at 1348–49.  Still, a state's interests in preventing recidivism and protecting its citizens allow it to impose travel restrictions on sex offenders as part of an otherwise lawful registration scheme.  "[M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of [his or her] right to travel."  *Id.* at 1348 (citing *Saenz*, 526 U.S. at 499).

Plaintiff has pleaded no facts plausibly supporting a conclusion that the requirement unreasonably burdens his freedom to travel.  Alabama's law requires a registrant to obtain a travel permit from law enforcement when he or she is temporarily "away from his or her county of residence for a period of three or more consecutive days."  Ala. Code § 15-20A-15(a).  Plaintiff does not allege that he is treated differently from nonresident sex offenders, and most importantly, he does not allege that the permit requirement has prevented him from leaving the state.  (Am. Compl. ¶ 93 (alleging only that "the requirement to seek a travel permit dramatically alters Plaintiff's status as a U.S. Citizen").)

Recognizing a fundamental right to interstate travel based on Plaintiff's unspecified allegations risks extending "the doctrine beyond the Supreme Court's pronouncements in this area."  *Miller*, 405 F.3d at 712 (rejecting a challenge to Iowa's sex offender law premised on a right to interstate travel).  Alabama's "strong interest

in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those [who] could reoffend" support the constitutionality of ASORCNA's travel restrictions based on the facts alleged. *Moore*, 410 F.3d at 1348–49 (upholding travel restrictions in Florida's Sex Offender Act); *see also Pelland v. Rhode Island*, 317 F. Supp. 2d 86, 95 (D.R.I. 2004) (rejecting a sex offender probationer's due process challenge to travel restrictions because – assuming the state could not categorically restrict the liberties of probationers – the limitations were nonetheless reasonable and served a legitimate governmental interest).

2.    <u>Right to Marry and Carry on Familial Relationships</u>

Plaintiff complains that Alabama's sex offender registration laws violate his fundamental right to marry and carry on familial relationships because they prevent him from living with his mother and his wife.  (Am. Compl. ¶¶ 23, 46.)  This claim fails.  No provision of Alabama's sex offender registration laws prohibits him from residing with his wife or his mother.  Ala. Code § 15-20A-11 (listing prohibited residence locations).  To the extent the law inhibits Plaintiff from doing these things, it does so only because the address at which Plaintiff desires to live with his wife and his mother is not a compliant address.

ASORCNA "does not directly regulate the family relationship" or prevent Plaintiff's wife or mother from residing with him at a compliant address. *Miller*, 405

F.3d at 711 (rejecting a similar challenge to Iowa's sex offender law).  An indirect effect does not amount to an infringement of a fundamental right, *Moore*, 410 F.3d at 1345–46, and the residency requirements rationally relate to the state's interest in preventing recidivism. *See* Ala. Code § 15-20A-2(5) (finding that "[e]mployment and residence restrictions, together with monitoring and tracking," further "the primary governmental interest of protecting vulnerable populations, particularly children").

      3.    <u>Right to be Free from Affirmative Stigmatization</u>

There is no fundamental right to be free from affirmative stigmatization, and Plaintiff's claim premised on that right entitles him to no relief.  The "rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, [and] to bodily integrity," are fundamental rights protected by the Due Process Clause. *Glucksberg*, 521 U.S. at 720.  The "right" to be free from affirmative stigmatization is not.

In the absence of a fundamental interest, the relevant inquiry is whether the dissemination of information regarding Plaintiff's status as a sex offender – dissemination he argues affirmatively stigmatizes him – is rationally related to a legitimate governmental purpose.  It is.  The stigmatization Plaintiff complains of "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public."

*Smith,* 538 U.S. at 99 (discussing Alaska's sex offender registration and community notification law).  The dissemination of truthful information serves the legitimate governmental objective of informing the public for its own safety.  *Id.* at 98–99.  "Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation."  *Id.* at 99 (upholding Alaska's law).  Plaintiff has no colorable claim that registration violates a nonexistant due process right to be free from affirmative stigmatization.

    4.    <u>Full Faith and Credit</u>

Plaintiff's Colorado judgment of conviction contains no judgment – indeed, no conclusion – that Plaintiff should not be subject to registration.  Thus, there is no judgment that Plaintiff is not subject to registration to which Alabama is required to give full faith and credit.  The only judgment to which Alabama must give full faith and credit is Plaintiff's rape conviction, and it has done so.  *Cf.* Ala. Code § 15-20A-5(33) (requiring individuals convicted in other jurisdictions of a crime that, if it had been committed in Alabama, would have constituted an enumerated sex offense under Alabama law to register).

Plaintiff's argument is analogous to that of the similarly unsuccessful plaintiff in *Rosin v. Monken*, 599 F.3d 574, 576 (7th Cir. 2010).  In *Rosin*, Illinois police did not violate the Full Faith and Credit Clause when they required a man to register as

a sex offender under that state's laws, notwithstanding that he was not required to register in New York where he was convicted.  *Id.*  In the New York judgment accepting his plea agreement, boilerplate language regarding sex offender registration was stricken, leaving the judgment silent on registration.  *Id.* at 575.  The absence of the provision did not preclude other states from requiring him to register.  *Id.* at 576.

Similarly, the judgment of the Colorado court – which is silent on registration in Colorado or any other state – does not preclude Alabama from requiring Plaintiff to register.[15]  Plaintiff's allegations do not state a claim that any Defendant has violated his rights under the Full Faith and Credit Clause.

## D.     Plaintiff's challenge based on Equal Protection fails.

In Count III, Plaintiff argues Alabama's sex offender registration laws violated his rights under the Equal Protection Clause.   U.S. Const. amend. XIV, § 1.

---

[15]  Plaintiff's attempts to distinguish *Rosin* are unavailing.  (Doc. # 97 at 37–38.)  Neither Plaintiff nor the *Rosin* plaintiff was ever required to register in their respective states of conviction.  *Rosin*, 599 F.3d at 575.  Additionally, though there is no judgment affirmatively labeling Plaintiff a sex offender or subjecting him to registration, there *is* a judgment of conviction adjudicating him guilty of sexual assault in the first degree and finding that he knowingly inflicted sexual penetration and caused the submission of his victim through the actual application of physical force and violence.  (Docs. # 76, Exs. 1, 2.)  Such a judgment would have subjected Plaintiff to registration under Act 507 and the CNA, and currently subjects him to registration under ASORCNA.  *See supra* Part II.A.1. (discussing the evolution of Alabama's sex offender registration laws).  Consideration of the judgment of conviction at this stage is proper, as it is an extrinsic document central to Plaintiff's claim, and neither party challenges its authenticity.  *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (permitting courts to consider information outside the four corners of a complaint at the motion to dismiss stage under limited circumstances).

29

Generally, a successful equal protection claim requires that a plaintiff show he was treated less favorably than others similarly situated and that the discriminatory treatment was based on some constitutionally protected interest, such as race.[16] *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Sex offenders are not a suspect class, nor do various sub-classifications of offenders based on the offender's "parental relationship to victim, status of [the] offender as a minor, insanity or civil commitment of the offender, [or] release of [the] offender from supervision prior to enactment of the statute" divide offenders into suspect classes. *Moore*, 410 F.3d at 1346; *see also United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001) ("Sex offenders are not a suspect class."). Thus, strict scrutiny will not apply to Plaintiff's equal protection claim.

Instead, classifications based on sex offender status are subject to rational basis scrutiny, which asks "whether they are 'rationally related to a legitimate governmental purpose.'" *Moore*, 410 F.3d at 1346 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). The Alabama Legislature laid out ample justification

---

[16] In an exception to this general rule, a so-called "class of one" equal protection claim can succeed where a plaintiff shows that (1) the defendant intentionally treated him differently from others similarly situated, and (2) there was no rational basis for the difference in treatment. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). Plaintiff has made no allegation that his treatment was "irrational and wholly arbitrary" as compared to others convicted of similar crimes in other jurisdictions and required to register in Alabama, *Olech*, 528 U.S. at 565, and thus, his claim is not a class of one claim.

for its sex offender laws, Ala. Code § 15-20A-2(1), and even if it had not, it is not difficult to imagine the laws' legitimate governmental purpose.  *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (emphasizing that when applying rational basis scrutiny, "[t]he *actual* motivations of the enacting governmental body are entirely irrelevant" (emphasis in original)).

### E.    Plaintiff has not otherwise stated a claim for a constitutional tort.

Plaintiff's remaining federal claims – found in Counts V, VI, and VII – fail to satisfy the Rule 8 requirement[17] that they include "a short and plain statement" showing that Plaintiff "is entitled to relief."  Fed. R. Civ. P. 8(a).

#### 1.    Fourth Amendment Violation

Count V alleges that certain Defendants – the City of Montgomery, Mayor Strange, Chief Murphy, and Montgomery County Sheriff Marshall – violated Plaintiff's Fourth Amendment rights when they unlawfully arrested him.[18]  Plaintiff

---

[17]   Any ink spilled over a heightened pleading requirement was too much.  (*See* Docs. # 79 at 19, 97 at 18 (debating whether the Amended Complaint satisfied a heightened pleading requirement).)  "After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.  All that remains is the Rule 9 heightened pleading standard."  *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010); *see also Smiley v. Ala. Dep't of Transp.*, 778 F. Supp. 2d 1283, 1299 (M.D. Ala. 2011) ("[T]here is no 'heightened pleading' standard in cases, like this one, governed by Federal Rule of Civil Procedure 8(a).").

[18]   Plaintiff's scattershot Amended Complaint refers to an "illegal seizure" and "false imprisonment" but does not articulate under what circumstances he was detained such that his detention amounted to a constitutional violation.  (Am. Compl. ¶¶ 111–25.)  "To minimize confusion created by [the] haphazard pleadings," the court has treated Count V as an unlawful

appears to argue that his entire period of registration, beginning in April 2010 and continuing to the present, amounted to an arrest without probable cause, but his argument fails.

Under the language of the Fourth Amendment, "an arrest is a seizure of a person." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "An arrest occurs when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Jeanty v. City of Miami*, 876 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (internal quotations and citations omitted). Since moving to Alabama and registering, Plaintiff has been free to move about, subject to residency and employment restrictions and the travel permit requirement. Though not insignificant, a reasonable person would not perceive such restrictions as approximating formal arrest. Thus, based on Plaintiff's allegations, the only factual basis for an unlawful arrest claim would be his April 2010 visit to the Montgomery Police Department.[19] (Am. Compl. ¶¶ 19–29.)

_____

arrest claim. *See Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1223 n.5 (M.D. Ala. 2012) (taking a like approach with like pleadings).

[19] This has the practical effect of eliminating the claim against Sheriff Marshall, as Plaintiff offers no explanation for how or why Sheriff Marshall should be held liable for the actions of Montgomery Police Department detectives not in his chain of command.

Assuming without deciding that keeping Plaintiff at the police department long enough to ascertain the details of his conviction was a constitutional violation,[20] the individuals named in this count did not cause the violation.  Section 1983 creates a private right of action when a person acting under state law "subjects, or causes to be subjected," a plaintiff to a constitutional deprivation. 42 U.S.C. § 1983.  Plaintiff does not allege that Mayor Strange, Chief Murphy, or Sheriff Marshall were present in the Montgomery Police Department that day and unreasonably seized him (Am. Compl. ¶¶ 18–29, 111–25), and he dismissed his claims against the detectives who were (Doc. # 49).  Nor does Plaintiff explain how the named Defendants otherwise caused his detention.  Thus, the individual capacity claims for unlawful arrest against Mayor Strange, Chief Murphy, and Sheriff Marshall should be dismissed.

As for the official capacity claims, neither the employment relationship between the City and the detectives nor the supervisory relationship between Mayor Strange, Chief Murphy, and the detectives can serve as the exclusive basis for official liability. Section 1983 does not support vicarious or respondeat superior liability, which rest "solely on the basis of . . . an employer-employee relationship." *Monell v. Dep't of*

---

[20]  The court expresses doubt that this would be an unreasonable seizure, in light of the fact that Plaintiff presented himself at the police department, volunteered the fact of his conviction, and then inquired about whether that conviction made him subject to registration. (Am. Compl. ¶ 74.)  Upon determining that he would be subject to registration, it was reasonable for officers to require him to register.

*Soc. Servs.*, 436 U.S. 658, 692 (1978).  Instead, the custom or policy requirement distinguishes "acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479 (1986) (emphasis in original).

Plaintiff has identified no policy or custom pursuant to which any person acted that would support official liability.  Plaintiff does allege elsewhere that Defendants violated unspecified constitutional rights "because of a policy or custom of their respective agencies," (Am. Comp. ¶¶ 127–29), but he fails to identify with any specificity the substance of that policy or custom, what action the policy compelled which Defendants to take, or any other fact that would nudge his claim from the conceivable to the plausible.  *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Accordingly, his official capacity claims also fail.

2. Deliberate Indifference and Failure to Train

In Count VI, Plaintiff alleges a claim based on "Deliberate Indifference/Failure to Train."  (Am. Compl. ¶ 126.)  This claim cannot withstand Defendants' Rule 12 challenge.

First, Plaintiff titles the Count "Deliberate Indifference" – a term of art associated with Eighth Amendment violations – but Plaintiff raises no Eighth Amendment claim, nor does he otherwise explain who exhibited deliberate indifference to what.  (Am. Compl. ¶¶ 126–29.)  Second, the title of the count alleges a "Failure to Train," but nowhere in the Count's four paragraphs does Plaintiff articulate who should have trained whom on what topic.  In fact, the word "train" does not appear at all.  (Am. Compl. ¶¶ 126–29.)

Ignoring the Count's heading in favor of its body does not make the claim more comprehensible.  The claim does not put Defendants on notice of Plaintiff's allegations against them such that they could respond meaningfully.  *See Twombly*, 550 U.S. at 556 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").  It is therefore due to be dismissed.

### 3.    Failure to Prevent Violation of Rights

Plaintiff brings a claim against all Defendants in Count VII alleging that "[e]ach and every Defendant had knowledge that Plaintiff's rights were being violated and had the power to prevent or aid in preventing the wrongful acts," but failed to do so.  (Am. Compl. ¶ 74.)  Again, the claim does not satisfy the notice pleading standard.

State officials in a position to intervene to prevent another officer's use of excessive force have a duty to do so. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). But it is unclear whether the duty to intervene exists for constitutional deprivations other than excessive force. *See Mehta v. Foskey*, 877 F. Supp. 2d 1367, 1378 (S.D. Ga. 2012) (comparing courts' differing conclusions on whether a defendant may be held liable under Section 1983 for the failure to intervene in circumstances other than the use of excessive force). If such claims are cognizable, Plaintiff's claim nonetheless fails because his complaint contains nothing more than a bare, conclusory allegation.[21] There are no plausible facts to support it. Plaintiff does not identify the circumstances under which any Defendant knew of any specific violation, was in a position to prevent it, and failed to do so. (Am. Compl. ¶¶ 130–34.) The allegations consist of "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," and must be dismissed. *Twombly*, 550 U.S. at 555.

**F.   Plaintiff has not stated claims for relief under state law.**

The final counts of Plaintiff's Complaint accuse Mayor Todd Strange, Chief of

---

[21] Specifically, Plaintiff's complaint alleges that "[e]ach and every Defendant knew of and/or witnessed the other individual Defendants' wrongful conduct, as stated hereinabove, but failed or refused to prevent it or aid in preventing it . . . ." (Am. Compl. ¶ 133.) This leaves the court wondering what the relevant wrongful conduct was and whether Plaintiff alleges that each Defendant knew of the conduct or that each Defendant witnessed it.

Police Kevin Murphy, and the City of Montgomery (the "Municipal Defendants") of committing several state law torts. But to the extent those claims target the City, they are time barred because Plaintiff undisputedly failed to give the City notice of those claims within six months after they accrued. Ala. Code § 11-47-23 ("All claims against the municipality . . . for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred."). The same goes for Plaintiff's official capacity claims against Mayor Strange and Chief Murphy, which are claims against the City. *See Shows v. Morgan*, 40 F. Supp. 2d 1345, 1365 (M.D. Ala. 1999) (dismissing state law claims against city and against city officers in their official capacity for failure to timely file a notice of claim).

That leaves only Plaintiff's individual capacity claims against Mayor Strange and Chief Murphy, both of whom argue they are immune from suit. But it is unnecessary to decide whether Strange and Murphy are immune from the state law claims alleged against them for a simple reason: Plaintiff has failed to state any claims against them. Although Plaintiff's complaint includes claims of false imprisonment (Count VIII), outrage (Count IX), and several suggestions of negligence (Counts X, XI, XII), none alleges facts sufficient to state a claim against either Mayor Strange or Chief Murphy.

37

1.      <u>False Imprisonment</u>[22]

Plaintiff's false imprisonment claim cannot survive unless he alleges facts indicating Mayor Strange or Chief Murphy unlawfully detained him.  *See* Ala.Code § 6–5–170 ("False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.").  Assuming Plaintiff was unlawfully detained at the police station (a question the court need not reach), the Amended Complaint contains no factual allegations suggesting either Mayor Strange or Chief Murphy participated in that detention.

Nor has Plaintiff identified a theory of vicarious liability that might suffice to hold Mayor Strange and Chief Murphy responsible in their individual capacities for the actions of subordinates.  Employers may be liable for an employee who commits false imprisonment.  *See Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 653 (Ala. 1996).  So can be people who do not actually effect an arrest, provided they are "involved with or related to the [arrest] . . . as instigators or participants."  *Id.*  But the Amended Complaint does not suggest Mayor Strange or Chief Murphy, in their individual capacities, employed any of the officers who detained Plaintiff – the officers worked for the City, just like the Mayor and the Police Chief.  *See Norris v.*

---

[22]  Count VIII bears the heading "False Imprisonment/False Arrest-State Law."  (Am. Cmpl. 28.)  Under Alabama law, an unlawful arrest amounts to a type of false imprisonment, not a standalone tort.  *See Crown Cent. Petrol. v. Williams*, 679 So. 2d 651, 654 (Ala. 1996).  Accordingly, the court will discuss Count VIII as a false imprisonment claim.

*City of Montgomery*, 821 So. 2d 149, 156–57 (Ala. 2001) ("[A] municipality's chief executive is not vicariously liable for the misconduct of his or her subordinates."). Nor does Plaintiff allege either of them instigated his purported arrest.  Because Plaintiff has not pleaded facts to plausibly state a claim of false imprisonment against Mayor Strange or Chief Murphy in their individual capacities, that claim is due to be dismissed.

2.    Outrage

Plaintiff's outrage claim cannot survive absent allegations of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011).  At best, Plaintiff alleges City employees under the supervision of Mayor Strange and Chief Murphy enforced a duly enacted Alabama law.  Nothing suggests such conduct "go[es] beyond all possible bounds of decency," *id.*, so Plaintiff has failed to state claim of outrage.

3.    Negligence

The final three counts of Plaintiff's complaint are variations on a theme:  Mayor Strange and Chief Murphy are liable for negligence.  But none of those counts identify any duty of care, nor do they suggest Mayor Strange or Chief Murphy breached one. The closest Plaintiff comes is an allegation that the Municipal Defendants negligently

implemented unconstitutional policies.  (Am. Compl.  ¶ 151 ("Mayor and Murphy

were aware of or should have known of the unconstitutionality of the policies that they

trained the detectives as described above.").)  Even there, Plaintiff cites no authority

to suggest Alabama *state* law recognizes a cause of action for a negligent violation of

the *federal* Ex Post Facto Clause, assuming Plaintiff can prove a constitutional

violation occurred in the first place.  Accordingly, Plaintiff's negligence claims are

due to be dismissed.

## G.    Plaintiff's shotgun pleadings warrant dismissal.

Under most circumstances, when confronted with a complaint that lacks the

plausible factual allegations Rule 8 requires, the court is inclined to allow a plaintiff

to replead.  It is not so inclined here.  Plaintiff's shotgun pleading makes it "virtually

impossible to know which allegations of fact are intended to support which claim(s)

for relief."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366

(11th Cir. 1996).  Even in the latest iteration of his complaint – consisting of 43 pages

and almost 200 numbered paragraphs – Plaintiff has articulated a plausible entitlement

to relief for only one of his claims.  If sufficient facts to support the other claims

existed, he surely would have pleaded them properly in one of four attempts.

Granting Defendants' motions to dismiss on the claims lacking supporting facts is the

proper course.  *See Byrne*, 261 F.3d at 1130–31 (approving of dismissing shotgun

pleadings); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("We have frequently railed about the evils of shotgun pleadings and urged district courts to take a firm hand and whittle cases down to the few triable claims, casting aside the many non-triable ones through dismissals where there is failure to state a claim . . . .").

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motions to Dismiss (Docs. # 78, 80, 83, 86) are GRANTED in part and DENIED in part.  Specifically, the Motions to Dismiss are GRANTED as Counts I–III and V–XII of Plaintiff's Amended Complaint (Doc. # 74), and these claims are DISMISSED with prejudice.  The Motions to Dismiss are DENIED as to Count IV.  In sum, only Plaintiff's claim that the retroactive application of Alabama's CNA and ASORCNA violate his rights under the *Ex Post Facto* Clause remains.

DONE this 29th day of March, 2013.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE