IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. MCGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-1027-WKW |
| | ) | [WO] |
| | ) | |
| KEVIN J. MURPHY, *et al.*,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION ORDER

Before the court is Plaintiff's motion for reconsideration (Doc. # 361), which is construed as containing a motion for an interim award of attorney's fees and costs. Also pending before the court is Defendant Stephen T. Marshall's motion (Doc. # 363) to summarily deny Plaintiff's motion for reconsideration and for attorney's fees. Plaintiff's motion for reconsideration is due to be granted, Plaintiff's motion for an interim award of attorney's fees and costs is due to be granted in part and denied in part, and Defendant Marshall's motion is due to be denied.

---

[1] Upon consideration of the notice of substitution (Doc. # 362), and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of the Court is DIRECTED to make the following substitutions on the docket sheet: (1) Stephen T. Marshall, in his official capacity as Attorney General of the State of Alabama, in place of Defendant Luther Strange, in his official capacity; and (2) Charles Ward, in his official capacity as Director of the Alabama Department of Public Safety, in place of Defendant John Richardson.

# I.  PROCEDURAL HISTORY

On December 11, 2011, Plaintiff filed this lawsuit challenging a number of the provisions of the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"), Ala. Code 1975 § 15-20A-1 *et seq.*  On February 5, 2015, after protracted litigation, a four-day trial, and a necessary period for consideration of arguments raised in numerous post-trial briefs,[2] the court entered final judgment, which granted Plaintiff relief on two of his claims.  (Doc. # 284.)  Specifically, the court entered the following judgment:

> In accordance with the prior proceedings, opinions, and orders of the court, it is ORDERED, ADJUDGED, and DECLARED that the Alabama Sex Offender Registration and Community Notification Act, Ala. Code § 15-20A-1 *et seq.*, is unconstitutional under the Ex Post Facto Clause of the United States Constitution to the extent that it requires (1) in-town homeless registrants to register (or check-in) on a weekly basis with two separate law-enforcement jurisdictions as provided by Alabama Code § 15-20A-12(b) in conjunction with § 15-20A-4(13) and (2) all in-town registrants to complete travel permit applications with two separate law-enforcement jurisdictions as provided by Alabama Code § 15-20A-15 in conjunction with § 15-20A-4(13).

(Doc. # 284.)

On February 18, 2015, Plaintiff filed a motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988, which allows prevailing civil rights plaintiffs to recover reasonable costs and fees.  (Doc. # 285.)  Plaintiff sought $1,919,098.00 in

---

[2]  Trial was held from March 31, 2014, through April 3, 2014, followed by briefing on numerous post-trial motions. While the post-trial motions were under consideration, the Eleventh Circuit issued opinions in two potentially relevant cases, prompting further rounds of briefing. (*See* Doc. # 270; Doc. # 276.)

attorney's fees and $69,106.36 in costs.  (Doc. # 345.)  Defendants opposed Plaintiff's motion, arguing that Plaintiff was not entitled to any award of fees and costs because Plaintiff was not the prevailing party. (Doc. # 334.)  Alternatively, Defendants contended that any award of fees and costs should be limited because Plaintiff claimed unreasonably excessive hourly rates for an unreasonably excessive number of hours worked, the majority of items for which Plaintiff sought to recover costs were unreasonable or ineligible under §1988, and Plaintiff obtained only limited relief.  (Doc. # 334.)

Before briefing was completed on the motion for attorney's fees and costs, Plaintiff filed a notice of appeal (Doc. # 287) on March 16, 2015, and Defendants John Richardson, Luther Strange, Derrick Cunningham,[3] and the Montgomery County Sheriff's Department cross-appealed.  (Doc. # 305; Doc. # 310; Doc. # 316.)

On August 27, 2015, the court ordered that, "[t]o efficiently manage this case, avoid piecemeal adjudication of issues pertaining to attorney's fees and costs, and conserve judicial resources, . . . justice would be best served by denying [Plaintiff's] motion for attorney's fees without prejudice and with leave to re-file the motion after the conclusion of the appeal."  (Doc. # 350 at 2.)  Accordingly, the court exercised its discretion to deny Plaintiff's motion for attorney's fees without

---

[3] On May 14, 2015, the Eleventh Circuit Court of Appeals dismissed Defendant Cunningham's cross-appeal for want of prosecution.  (Doc. # 348.)

prejudice and with leave to file a new motion for attorney's fees after the Court of Appeals entered a mandate on the pending appeal.

On March 18, 2015, Alabama House Bill No. 316 was introduced. Among other revisions to ASORCNA, the bill sought to remove the two double-registration requirements from which this court's February 5, 2015 Order granted Plaintiff relief. On June 11, 2015, the bill was passed into law, and it became effective on September 1, 2015. 2015 Alabama Laws Act 463 ("H.B. 316").

Nearly three years after Plaintiff filed his notice of appeal, and over two years after the court denied Plaintiff's motion for attorney's fees and costs with leave to refile after issuance of a mandate, the appeal remains pending.

## II.   ANALYSIS

### A.   Motion for Reconsideration

Before deciding the merits of Plaintiff's motion for interim fees and costs, the court must decide whether Plaintiff has demonstrated good cause to reconsider the August 27, 2015 Order prior to issuance of the mandate. The Federal Rules of Civil Procedure do not specify the grounds available for motions for reconsideration of non-final orders, and resolution of such motions is within the court's discretion. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993); *see* Fed. R. Civ. P 54(b) (providing merely that nonfinal orders "may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities"). To ensure efficient judicial administration, this court generally does not entertain motions for reconsideration on grounds that were raised previously or that could have been timely raised before issuance of the order from which relief is sought. However, the court may grant relief from a nonfinal order upon a showing of good cause, such as a change in circumstances justifying relief, an intervening change in the law, a clear error on the part of the court, circumstances similar to those justifying relief from final judgments under Rules 59(e) or 60 of the Federal Rules of Civil Procedure, or other reasons demonstrating that relief is necessary to rectify clear error, prevent injustice, or ensure the efficient disposition of the case. *Cf. Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (describing the standard of review on motions for reconsideration under that court's local rules).

This case presents complex and difficult issues that affect the validity of state laws regarding sex offender community notification requirements. Thus, its resolution reasonably requires more time than necessary in ordinary cases. However, when the court entered its August 27, 2015 Order directing Plaintiff to refile the motion for attorney's fees and costs after entry of the mandate, the court did not anticipate[4] that, nearly three years[5] after entry of final judgment, the

_____

[4] In fact, for the reasons that the court originally stated for postponing ruling on the

5

mandate still would be outstanding.

It is now apparent that the protracted resolution of the appeal, however necessary for that court's full consideration of the issues, creates financial hardships the court did not anticipate when it issued the August 27, 2015 Order. (Doc. # 350.) Specifically, the significant financial hardships Plaintiff's counsel faces while waiting for a resolution of the appeal are precisely the kind (1) that the fee-shifting provision of 42 U.S.C. § 1988 is intended to redress, and (2) that often justify an interim award of fees and costs.

Awards of costs and fees under § 1988 exist to enable plaintiffs with meritorious claims to attract competent counsel in cases such as this one—cases that benefit the public by securing compliance with constitutional law, but that do not promise much in the way of a monetary damages award. Requiring counsel to

_____

motion for attorney's fees until the issuance of a mandate (Doc. # 350), and in an effort to promote efficient resolution of the complex attorney's fee dispute, the court initially delayed ruling on Plaintiff's motion for interim fees and costs to allow additional time for issuance of a mandate, which as the parties indicated, might be forthcoming at any moment. No mandate has issued in over nine months since the motion was filed, and, upon review of the record, the court finds no just reason for further delay in resolving Plaintiff's motion for an interim award of fees and costs.

[5] Final judgment issued on February 2, 2015. (Doc. # 284.) Plaintiff filed his motion for attorney's fees and costs on February 18, 2015. (Doc. # 285.) Plaintiff filed a notice of appeal (Doc. # 287) on March 6, 2015, and Defendants filed notices (Doc. # 305; Doc. # 310; Doc. # 316) of their cross-appeals later that same month. On May 14, 2015, Defendant Derrick Cunningham's cross-appeal was dismissed for want of prosecution. (Doc. # 348.) The appeal has been fully briefed, and oral argument was held in February 2016. (Doc. # 363 at 3.) On March 1, 2016, the Eleventh Circuit Court of Appeals issued a limited remand order requiring resolution of a jurisdictional issue. (Doc. # 352.) On April 18, 2016, after reviewing the parties' submissions in response to a briefing order, the court entered an order on remand resolving the jurisdictional issue. (Doc. # 360.)

wait years between entry of final judgment and a fee award fundamentally undermines the purpose of § 1988 by making representation in civil rights cases financially untenable and by discouraging members of the bar from undertaking similar cases in the future. However, the availability of interim fee awards can further the purposes of § 1988 by enabling civil rights attorneys to undertake representation when litigation is likely to be protracted in difficult and complex cases that require significant investment of time and resources. *See Hensley v. Eckerhart*, 461 U.S. 424, 429-30 & n.4 (1983) (recognizing Congress's intent that reasonable attorneys' fees available under § 1988 should ensure effective access to justice and enable prospective plaintiffs to attract competent counsel); *Fox v. Vice*, 563 U.S. 826, 833 (2011) (recognizing that prevailing civil rights plaintiffs ordinarily are entitled to a fee award under § 1988 because they serve as "private attorneys general" who vindicate policies that "Congress has considered of the highest priority"); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358–59 (5th Cir. 1977)[6] ("There is a danger that litigants will be discouraged from bringing [civil rights] suits because of the risks of protracted litigation and the extended financial drain represented by such a risk. An award of interim attorneys' fees will prevent extreme cash-flow problems for plaintiffs and their attorneys.").

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Further, effective September 1, 2015 (after the judgment was entered and after the court denied Plaintiff's initial fee petition), Alabama revised its law, removing the dual registration requirements that the court already had ruled were unconstitutional. Alabama thereby ensured that the ruling would be enforced, and that future developments on appeal will not deprive Plaintiff of the relief afforded by this court's judgment.[7]  *Cf. Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir. 1990) (Posner, J.) ("Once a plaintiff obtains substantive relief that is not defeasible by further proceedings, he can seek interim fees and the district court has the power to award them.").

---

[7] "If it becomes apparent that a case has become moot while an appeal is pending, the judgment below *normally* is vacated with directions to dismiss the complaint." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288 (1982) (emphasis added). Here, however, the case became moot on appeal because Defendants ceased the conduct already prohibited by the declaratory judgment. It would be an odd circumstance if, after the trial court has issued a final judgment granting prospective relief, a losing defendant could deprive the plaintiff of prevailing party status by filing an appeal and then mooting the appeal before entry of the mandate by "voluntarily" ceasing the very conduct that already had been prohibited by the judgment. Such a result would be especially odd where, as here, the defendant had not obtained an order staying the injunctive or declaratory relief pending the appeal. *Cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25–26 (1994) ("Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur [of the judgment]. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.' *Sanders v. United States*, 373 U.S. 1, 17 (1963) (citing *Fay v. Noia*, 372 U.S. 391, 438 (1963)). In these respects the case stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all.").

Regardless of the ultimate disposition of Defendant's cross-appeal, the judgment in this case relieved Plaintiff from the double registration requirement between the date the judgment was entered and the date the 2015 ASORCNA changes came into effect. The relief the judgment afforded Plaintiff during that time cannot be retroactively erased, even if the declaratory judgment is eventually vacated on appeal on grounds that the cross-appeal has become moot.

Therefore, the court finds that the previously unanticipated delay in the resolution of the appeal and the mootness of Defendants' cross-appeal present new and compelling reasons to grant relief from the August 27, 2015 Order by allowing Plaintiff to move for a reasonable interim award of fees and/or costs.

**B.** **Motion for Interim Award of Fees and Costs**

    **1.** **Prevailing Party Status**

To ensure that § 1988 is a meaningful tool for providing civil rights plaintiffs with effective access to the judicial process, prevailing civil rights plaintiffs are ordinarily entitled to recover an attorney's fees except when "special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429. To qualify as a prevailing plaintiff under § 1988, the plaintiff must meet a "generous" test: the plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit" by means of a judgment (or other similar judicially sanctioned relief, *e.g.*, a consent decree) that (1) provides relief on the merits of the plaintiff's claim and (2) "materially alters the legal relationship of the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff" at the time of the judgment. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citations and internal quotation marks omitted).

In some circumstances, a plaintiff may obtain a judgment that technically provides relief on the merits, but that does not materially alter the conduct of the

defendant for the plaintiff's benefit.[8]   In those cases, the plaintiff's technical victory is not sufficient to confer prevailing party status on the plaintiff.  *Farrar*, 506 U.S. at 113.  In other cases, the judgment alters the legal relationship of the parties for the plaintiff's benefit, but the magnitude of the relief obtained is nevertheless of such a technical or *de minimis* nature that the only reasonable fee amount "is no fee at all."[9]  *Id.* at 114-15; *see also Tex. State Teachers Ass'n v. Garland*, 489 U.S. 782, 792-93 (1989) (holding that, when a judgment satisfies the prevailing party requirements by materially altering the legal relationship of the parties in a manner that benefits the plaintiff, the degree of the plaintiff's overall success goes to the reasonableness of the fee award).

In opposing Plaintiff's original motion for attorney's fees, Defendants argued that, because Plaintiff ceased registering as homeless on December 29, 2014, he received no direct benefit from the February 5, 2015 declaratory judgment holding unconstitutional ASORCNA's requirement that in-town homeless registrants must register on a weekly basis with two separate law-enforcement jurisdictions.  (Doc. # 334 at 9.)  It is true that, when a judgment is moot at the time it is rendered, the judgment does not alter the parties' legal

---

[8] *See, e.g.*, *Rhodes v. Stewart*, 488 U.S. 1 (1988) (holding that prevailing party status was not satisfied where the judgment was moot at the time it was rendered).

[9] *See, e.g.*, *Farrar v. Hobby*, 566 U.S. 103, 115 (1992) (holding that the amount of a reasonable fee was "no fee at all" where the plaintiff sued for $17 million in money damages, but recovered one dollar in nominal damages and no injunctive or declaratory relief).

relationship in a manner that confers prevailing party status. For example, in *Rhodes v. Stewart*, 488 U.S. 1 (1988), at the time the district court entered an order ruling that prison officials failed to apply proper constitutional standards to two prisoner's requests to subscribe to magazines, the court was apparently unaware that the plaintiffs were no longer in state custody. 488 U.S. at 3. One of the plaintiffs had passed away prior to the judgment, and the other had been released. *Id.* Because the case was moot before judgment was entered, the plaintiffs were not prevailing parties because "the judgment . . . afforded the plaintiffs no relief whatsoever." *Id.* at 4.

In this case, however, Plaintiff's challenge to the double-registration requirement for homeless sex offenders was not moot at the time judgment was rendered. Because of that provision, Plaintiff was required, whenever he was homeless, to register quarterly and weekly with both the Montgomery County Sheriff's Office and the Montgomery Police Department, which were five miles apart.[10] (Doc. # 283 at 11.) When Plaintiff ceased registering as homeless two months prior to the entry of judgment, Plaintiff was not free of a reasonable probability of becoming homeless—and of facing the double registration requirement—again.[11]

---

[10] The court found that this requirement, which mandated a total of 112 registrations per year, imposed an affirmative disability. (Doc. # 283.)

[11] As this court found in the April 16, 2016 Order on Remand (Doc. # 360),

Therefore, as a sex offender who was permanently subject to ASORCNA's registration requirements and who faced a real threat of future homelessness, Plaintiff had a legal relationship with Defendants that, but for the judgment altering that relationship to his benefit, was reasonably likely to have subjected him to the double registration requirements for homeless sex offenders. *See United States v. Sec'y, Florida Dep't of Corr.*, 778 F.3d 1223, 1229 (11th Cir. 2015) (recognizing an exception to the mootness doctrine for disputes when "(1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its

---

during the time that Plaintiff Michael A. McGuire ceased being homeless in the course of this litigation, there existed a reasonable expectation and demonstrated probability (1) that he would return to being homeless at some point in the future; and (2) that, if Plaintiff McGuire again ceased to be homeless, his homelessness would be too short to fully litigate his challenge to ASORCNA's homeless provisions prior to its cessation.

(Doc. # 360 at 2.)

As is reflected by the common use of the word "transient" to describe homeless people, homelessness is often (as in Plaintiff's case) an episodic or fluctuating state, where "permanent" housing is sometimes available, and sometimes not. Even when not technically homeless, Plaintiff's housing situation has not been secure or permanent. Instead, when he was not living under a bridge, he moved between various hotels and family residences, depending on changing financial and family circumstances. (Doc. # 354; Doc. # 355.) The court notes that Plaintiff ceased to be homeless in late 2014 because family members took him in, but that his continued ability to reside with family was constantly at the mercy of changing family circumstances that were out of his control, such as his aging mother's health. (Doc. # 354 at 2-4; Doc. # 355.) In fact, in March 2016, Plaintiff became homeless again because his attorney discovered that the family home where he had resided since December 2014 had never been compliant with ASORCNA due to a nearby daycare that had been in operation since before the entry of judgment. (Doc. # 354 at 4; Doc. # 355.) The fact that Plaintiff did eventually become homeless again in March 2016 further confirms that, at the time of the judgment, the threat of future homelessness was real and immediate, not merely conjectural or hypothetical.

duration too short to be fully litigated prior to its cessation or expiration" (internal quotation marks and citations omitted)). *Cf. Virdi v. Dekalb Co. Sch. Dist.*, 216 F. App'x 867, 871-72 (2007) (holding that a plaintiff who obtains injunctive relief may be entitled to attorney's fees if the plaintiff continues to have or is likely to have some legal relationship to the defendant that is reasonably likely to subject him to the challenged conduct in the future; the plaintiff need not show "to a moral certainty . . . that he will definitely" be subject to the same conduct in the future).

Defendants also have argued that Plaintiff obtained merely a technical or *de minimis* victory as to the court's ruling that ASORCNA was unconstitutional to the extent that it required all in-town registrants to complete travel permit applications with two separate law-enforcement jurisdictions. (Doc. # 354 at 9.) In support of this argument, Defendants cite *Texas State Teachers Ass'n v. Garland*, 489 U.S. 782, 792-93 (1989). In *Garland*, the plaintiff teachers obtained a ruling that a regulation requiring school principal approval of all after-school teacher meetings with union representatives was unconstitutionally vague because the regulation provided no guidelines for the principal's decision. 489 U.S. at 785-86. The district court characterized this ruling as pertaining to "an issue of minor significance" that did not support a fee award because there was no indication that the plaintiffs had sought or been denied a principal's permission to use school premises during non-school hours. *Id.* at 786, 792. The Supreme Court agreed,

characterizing the plaintiffs' victory on the issue as "purely technical or *de minimis*" so that, "if this had been [the plaintiffs'] only success in the litigation, we think it clear that this alone would not have rendered them 'prevailing parties.'" 489 U.S. at 792.

*Garland* is distinguishable. As characterized by the Supreme Court, the *Garland* plaintiffs' *claims* challenged the constitutionality of regulations prohibiting or limiting communications and meetings about unions *during the school day*.[12] Thus, although the ruling as to the constitutionality of the after-school meeting approval requirements may have had a minimal effect on the parties' legal relationship, it merely addressed an incidental side issue because it did not afford a measure of relief on the merits of the plaintiffs' *claims*. *See Farrar*, 506 U.S. at 109, 111 (holding that a prevailing plaintiff must "succeed on [a] significant issue in litigation which achieves some of *the benefit . . . sought in bringing suit*" and that the prevailing plaintiff "must obtain some relief *on the merits of his claim*" (emphasis added)). Indeed, in *Garland*, the Supreme Court

---

[12] See *Garland*, 489 U.S. at 785:

Petitioners' complaint alleged that the school district's policy of prohibiting communications by or with teachers *during the schoolday* concerning employee organizations violated petitioners' First and Fourteenth Amendment rights. In particular, petitioners focused their attack on the school district's Administrative Regulation 412, which prohibits employee organizations *access to school facilities during school hours* and proscribes the use of school mail and internal communications systems by employee organizations.

(Emphasis added.)

held the plaintiffs *were* entitled to attorneys' fees because, aside from the minimally beneficial ruling regarding principal permission requirements for after-school meetings, and despite failing to achieve the "primary relief sought" in filing suit, Plaintiffs did obtain some relief on the merits of some of their claims. *Garland*, 489 U.S. at 787, 790-92 (rejecting the Fifth Circuit's "central issue" test, which required that the plaintiff achieve "the primary relief sought," in favor of a more generous test that required only "some relief on the merits of [the plaintiff's claims], either in the trial court or on appeal").

Furthermore, from a practical standpoint, the ruling's effect on the school board's conduct or the parties' legal relationship or future dealings was insignificant. Not only was there no evidence that the plaintiffs ever sought or were denied use of school premises during non-school hours, but there was also no discussion as to the likelihood that they ever would. Moreover, the ruling did not prevent the school district from requiring teachers to obtain principal permission for the after-school union meetings; it merely required the school district to provide guidelines to the principals for the approval decision. Thus, while the ruling may have benefited the plaintiffs in some technical way, the ruling did not meaningfully relieve the plaintiffs of any real or likely burden associated with seeking principal approval for future after-school meetings. *See Garland*, 489 U.S. at 792 (characterizing the ruling as "a technical victory . . . so insignificant . . . as

to be insufficient to support prevailing party status"); *see also Jenevein v. Willing*, 605 F.3d 271 (5th Cir. 2010) (holding that a plaintiff judge's technical First Amendment victory was *de minimis* where the judgment left the challenged judicial censure in force and "almost all . . . untouched" except for "two recurring sentence fragments"); *Roarke v. Hardee LP v. City of Austin*, 522 F.3d 533, 556 (5th Cir. 2008) (holding that plaintiffs' technical victory on a challenge to a municipal regulation allowing for business license revocation did not entitle them to fees "in light of [their] numerous other [unsuccessful] claims" and the fact that the city could still enforce the license revocation provision so long as it provided "expeditious judicial review").

When judgment was entered in this case, Plaintiff's permanent status as a sex offender placed him under a continuing affirmative obligation to comply with the dual travel permit requirements. At the time of the judgment, it was reasonably likely that, at some point in the future, Plaintiff would travel outside the county for three or more consecutive days.[13] Thus, at the time judgment was entered, it altered the parties' legal relationship and afforded Plaintiff some relief on his claims by relieving him of the ongoing affirmative obligation to complete travel permit applications with two separate law-enforcement jurisdictions before

---

[13] (*See* Doc. # 283 at 11 (this court's finding that Plaintiff "has . . . had to limit his travel – a hobby he enjoyed prior to moving to Alabama – because of the three-day travel permit requirement.").)

traveling outside his county of residence. *Garland*, 489 U.S. at 790 (holding that a plaintiff is entitled to reasonable fees under § 1988 if the plaintiff obtains "some relief on the merits of his claims"). *Cf. Vidi*, 216 F. App'x at 870-71 (holding that, where a judgment declared an unconstitutional system of racial preferences in awarding architectural contracts, the plaintiff, who was an architect and who remained eligible to apply for contracts in the future, received a benefit at the time judgment was entered because he was reasonably likely to apply for a contract in the future); *cf. also TK's Video, Inc., v. Denton Co. Tex*, 24 F.3d 705 (5th Cir. 1994) (distinguishing *Garland* and finding prevailing party status despite the fact that the plaintiff had never previously applied for an adult bookstore license under successfully-challenged licensing regulations; the court reasoned that the plaintiff was a prevailing party because, but for obtaining judicial the relief on the merits, the plaintiff's status as an adult bookstore would almost certainly have obligated it to apply for a license under the unconstitutional regulations in the future if it wished to continue its business operations).

Accordingly, the court finds that Plaintiff is the prevailing party for purposes of § 1988 and that the relief obtained is not so minimal as to render any fee award unreasonable.

### 2. Propriety of an Interim Award

In considering whether to allow a Plaintiff to recover an interim fee award,

the court is mindful of the following factors relevant to the propriety of an interim award of attorney's fees: "(1) whether the grounds for an interim award are sufficiently discrete from matters remaining to be litigated; (2) whether the moving party will be unable to continue litigating the case absent an interim award; (3) whether the party opposing the interim award has been guilty of dilatory tactics; and (4) whether the action has been or is likely to be unduly protracted." *Walters v. City of Atlanta*, 652 F. Supp. 755, 761 (N.D. Ga. 1985), *modified on other grounds*, 803 F.2d 1135 (11th Cir. 1986).

Here, the grounds for an interim award are now sufficiently discrete from matters remaining to be litigated to support an interim fee award. Changes to Alabama law effective September 15, 2015, have rendered Defendants' cross-appeal moot,[14] as Defendants have conceded. Therefore, regardless of the outcome of Plaintiff's appeal, it is now feasible to craft an interim fee award as to the dual-registration claims on which Plaintiff has already obtained relief. *Cf. Richardson*, 900 F.2d at 119 (holding that interim fees may be awarded "once a plaintiff obtains substantive relief that is not defeasible by further proceedings").

As Defendants point out, because the appeal is already under submission, the interim fee award is not necessary to enable Plaintiff to continue with this

---

[14] The cross-appeal was not moot prior to the effective date of the changes in Alabama law. Until that date, the dual-registration requirements remained in effect and, but for the judgment in this case, were potentially applicable to Plaintiff.

litigation. However, this case presents unique circumstances. As explained in Section I.A., because of the financial strain and uncertainty caused by the unusally protracted status of the appeal, an interim fee award is needed give effect to the underlying purpose of § 1988, which is to ensure that civil rights plaintiffs *in general* can continue to obtain representation. Withholding an interim fee award would hamper Attorney McGuire's ability to take on other civil rights cases due to lack of resources.[15] Allowing an interim award will encourage other members of the bar to accept civil rights cases by reassuring them that the likelihood of a protracted appeal in a complicated case will not financially cripple their firms.

Defendants correctly note that the delay at the appellate stage is not due to any party's dilatory tactics. Nevertheless, the delay exists, and in light of the prejudice caused by the delay in these unusual circumstances, Defendants' lack of bad faith conduct does not outweigh other relevant factors that strongly support imposition of an interim award.

---

[15] Plaintiff argues that an interim fee award is justified because of the extreme financial hardship Attorney McGuire has suffered while waiting on the opportunity to move for fees in a case to which he devoted significant resources and time. Attorney McGuire allegedly expended 5,821.1 hours on this case (including 871.3 hours for which he did not seek compensation) up to the time he filed his initial motion for attorney's fees. (Doc. # 320 at 12.) Many of the hours Attorney McGuire spent on this case exceeded what was reasonable. However, as explained in Section II.B.2., Defendants have conceded—and the court agrees—that Attorney McGuire reasonably expended a significant amount of time (2,441.85 hours) on the case as a whole. The court finds that the hours Attorney McGuire reasonably expended on the case, standing alone, would reasonably have required the devotion of sufficient resources to impair his firm's ability to take on additional clients, particularly in light of the unusual delay in Attorney McGuire's ability to recover some portion of those resources in the form of a § 1988 award of fees and costs, the complexity of the issues, and the undesirability of the case.

Further, the unduly protracted status of the appeal, which has already caused significant hardship, supports imposition of an interim fee award. In an attempt to promote efficient resolution of the attorney's fee dispute as a whole, the court already withheld ruling on the motion for interim fees for over nine months because the appeal had long been under submission, and it appeared likely that a mandate would issue at any moment, rendering moot the interim fee request. While it is not possible to speculate on how long the appellate delay will continue, the court finds no just reason to further delay an interim fee award on the expectation that a mandate might issue soon.

Finally, Plaintiff has already received the relief order by this Court, full and final. The appeal can have no effect on the relief already received, for which the interim fee will be awarded. There is thus no reason for further delay.

### 3.     Amount of Reasonable Interim Attorney Fees

The "generous formulation" of the prevailing party standard "brings the plaintiff only across the statutory threshold" of § 1988, entitling the plaintiff to a *reasonable* fee. *Hensley*, 461 U.S. at 433. Defendants argue that, because Plaintiff obtained relief on relatively few of his claims, a reasonable fee would be no fee at all. (Doc. # 334 at 10-11.) As explained in Part II.B.1., Plaintiff's success is not of such a technical or *de minimis* nature as to render *any* fee award unjust. Plaintiff is entitled to *some* fee award, but the court must consider Plaintiff's limited success

in determining the amount of a reasonable fee award. *Hensley*, 461 U.S. at 440 (holding that, "where a plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. From there, "other considerations, including the crucial factor of the results obtained," may justify adjustments to the fee award. *Id*. Where, as here, the plaintiff succeeded only on a limited number of his claims and much of counsel's time was expended on the litigation as a whole, it is often not feasible to reduce the award by identifying specific hours to be excluded. *Id*. at 435, 437. In such cases, the court may discount the amount of a reasonable award by considering the significance of the relief obtained in relation to the hours reasonably expended on the case as a whole. *Id*.

Plaintiff seeks an interim attorney fee award for 2,441.85 hours expended by Attorney McGuire and 378.8 hours expended by attorneys with the civil rights nonprofit Equal Justice Under Law ("EJUL"), who joined the litigation shortly before trial. (Doc. # 361 at 6; Doc. # 334 at 36.) In support of the attorney's fee request, Plaintiff notes that, in briefing on his previous motion for attorney's fees,

Defendants contended that Plaintiff's attorneys had reasonably expended, at most, only 2,820.65 of the total 5,382.6 hours for which Plaintiff sought attorney's fees. (Doc. # 320 at 12.)  Plaintiff proposes that applying a lodestar amount of $250.00[16] per hour to the allegedly uncontested 2,820.65 hours expended on the case would result in a reasonable fee of $705,162.50.

In briefing on the original motion, Defendants conceded only that Plaintiff's attorneys reasonably spent a total of 2,820.65 hours on the case *as a whole*, prior to any adjustment for the fact that Plaintiff obtained relief on only a limited number of his claims, and prior to any adjustment for gross excessiveness of the fee request.  (Doc. # 334 at 36.)  Defendants submitted evidence to support their position that a reasonable lodestar amount would be $185 per hour for 2,441.85 hours Attorney McGuire worked on the case as a whole, and $275 per hour for 378.8 hours the EJUL attorneys worked on the case as a whole.  (Doc. # 334 at 36).  Defendants further argued that the amount of attorney's fees should be adjusted downward from those lodestar figures for gross excessiveness of Attorney McGuire's fee request and because of the minimal nature of the relief obtained. Specifically, Defendants contended that, with a 10% reduction for gross

---

[16] In briefing on the original motion, Plaintiff requested hourly fees that varied from $350.00 per hour for Attorney McGuire's work to $393.00 per hour for the EJUL attorneys. (Doc. # 320 at 12.)  Plaintiff now proposes that a $250.00 per hour lodestar amount should apply to the work of all his attorneys.  Plaintiff does not cite specific evidence in support of his new position that $250.00 is a reasonably hourly fee for all his attorneys.

excessiveness and an 85% reduction for minimal relief obtained, Attorney McGuire should reasonably recover no more than $60,985.20 in attorneys' fees. Defendants also argued that an 85% reduction in the EJUL attorneys' fee request would reasonably lead to a $15,625.50 fee award. (Doc. # 334 at 36.)

### a.    EJUL Attorneys

The court will not award fees to the EJUL attorneys at this time because Plaintiff offers no explanation and cites no specific evidence as to why the $250.00 hourly fee is reasonable for any of his attorneys, because it does not appear that the EJUL attorneys participated in the interim fee motion, and because Plaintiff requests an across-the-board $250.00 hourly fee for all attorneys, which is less than the $275.00 fee Defendants have already indicated would be acceptable for the EJUL attorneys. Accordingly, before entering a fee award for the EJUL attorneys, the court would benefit from argument addressing the amount of a reasonable hourly fee for the EJUL attorneys.

### b.    Attorney McGuire

Defendants have persuaded the court that Attorney McGuire reasonably worked 2,441.85 hours on the case as a whole. (Doc. # 334 at 36). Further, having reviewed both party's evidence (*see*, *e.g.*, Exhibits to Doc. # 320, 334, and 345), the court agrees with Defendants (and Plaintiff now appears to concede (Doc. # 361 at 7)) that a reasonable hourly fee for Mr. McGuire's work on this case would

be less than the $350.00 per hour Plaintiff requested in his original motion.

However, the court is not persuaded that Defendants' proposed hourly fee of $185.00 per hour is reasonably sufficient for Mr. McGuire's work. (Doc. # 334 at 36). This case involved complex and difficult legal questions, and serving as the lead attorney required a level of skill in excess of what would be normally expected of a young associate. Further, unlike firms with multiple associates and partners, a sole practitioner's firm is significantly limited in the ability to take on other clients and cases when it assumes the lead representation in a difficult and complex case. Therefore, in determining an appropriate hourly fee for Attorney McGuire, the court concludes that, in light of all relevant factors and the quality of Attorney McGuire's work, which exceeded that normally seen in an associate with similar years of experience, Defendants' proposed $185.00 hourly fee, which is based largely on fees charged by law firm associates, is unreasonably low.

Based on a review of all the evidence submitted by both parties (*see*, *e.g.*, Exhibits to Doc. # 320, 334, and 345), and in light of the quality of Attorney McGuire's work, the court finds that $225.00 represents a reasonable hourly rate for Attorney McGuire. Multiplying that reasonable hourly rate by the 2,441.85 hours Attorney McGuire reasonably spent on this case yields a lodestar figure of $549,416.25 for Attorney McGuire's work on the case as a whole.

The court also finds that additional adjustments are necessary in light of the

limited nature of the relief obtained and in light of the excessive hours Attorney

McGuire devoted to the case. The relief afforded by the February 5, 2015

Judgment is limited in relation to the extensive nature of Plaintiff's claims and the

breadth of Plaintiff's legal challenges to ASORCNA. Further, some reasonable

adjustment is appropriate in light of the excessive hours claimed by Attorney

McGuire.[17] This adjustment is not intended as a punishment for Attorney

McGuire's zealous representation or as a sanction for a grossly unreasonable fee

request, but is necessary upon consideration of issues of fundamental fairness.

Because Attorney McGuire devoted excessive time and resources to this case,

Defendants and the court, in turn, were required to also devote more resources to

the case than would otherwise be reasonable or expected.[18] Mitigating the award

in light of Attorney McGuire's excessive work on the case serves the ends of

justice by effectively relieving Defendants of unreasonable excess litigation costs

incurred through no fault of their own.[19] *See Hensley v. Eckerhart*, 461 U.S. 424,

---

[17] In his initial motion for attorney's fees, Plaintiff claimed that his attorneys expended a total of 6,324.7 hours on this case, but sought recovery for only 5,382.6 of those hours. Plaintiff sought a total of $1,900,198.40 in attorney's fees.

[18] For example, the court notes voluminous briefing which, while generally reasonable, also includes a number of corrected, supplemental, and duplicative briefs and arguments, which necessitated review, consideration, and responses. Defendants also submitted numerous briefs and occasional corrections to filings. However, based on its own observations over the course of this case and a review of the record, the court finds that Attorney McGuire's excessive investment of work in this case did obligate Defendants and the court also to devote more resources to the case than would otherwise be required.

[19] As an added bonus, but not as a basis for reducing the award, this adjustment also encourages consideration for the court's difficult task of apportioning limited judicial resources

429 (1983) (holding that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust").

Therefore, in light of Plaintiff's limited success on the merits in comparison to the claims asserted, and with a small but reasonable adjustment for Attorney McGuire's devotion of significantly more than reasonable resources to the litigation, the court finds $82,417.00 represents a reasonable attorney's fee for Mr. McGuire's work in obtaining the relief afforded by the judgment. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). This figure represents compensation for 366.3 hours, an 85% reduction in the total fee request.

Because the award is adjusted for Plaintiff's degree of success on the merits with respect to the limited relief afforded by the February 5, 2015 Judgment (Doc. # 285), Attorney McGuire shall be allowed to request additional attorneys' fees if he prevails on additional claims on appeal. However, on any future attorney's fee motion, the parties shall be bound by the court's findings (1) that $225.00 is a reasonable hourly fee for Attorney McGuire's work on this case, and (2) that Plaintiff reasonably spent no more than 2,441.85 hours on the case as a whole (up

---

for the efficient administration of all cases on its docket.

to the date of the judgment).

**4.     Amount of Reasonable Interim Costs**

Plaintiff also requests an interim award of $68,074.36 for costs, the same figure requested in his original fee motion.  Plaintiff acknowledges that, in briefing the original fee motion, Defendants objected to "virtually all" of his original request for costs.  Plaintiff mistakenly contends that Defendants' objections were "conclusory" as to all but $891 of the requested costs.  (Doc. # 361 at 7; Doc. # 334 at 34-35 (Defendants' arguments outlining their basis for opposing specific costs alleged to be unreasonable)).  Because Plaintiff does not adequately address Defendants' specific objections to the costs requested, the motion for interim fees is not sufficient to allow the court to determine at this time the amount of reasonable costs.  Accordingly, the court will reserve ruling on a reasonable award of costs until after the issuance of the mandate.

### III.     CONCLUSION

Accordingly, it is ORDERED as follows:

1.     Plaintiff's motion for reconsideration (Doc. # 361) is GRANTED.

2.     Plaintiff's motion for an interim award of costs and attorney's fees (Doc. # 361) is GRANTED IN PART to the extent provided in this Memorandum Opinion and Order.  In all other respects, Plaintiff's motion for an interim award of costs and attorney's fees (Doc. # 361) is DENIED.

3.     Defendant Stephen T. Marshall's motion to summarily deny Plaintiff's motion for reconsideration (Doc. # 363) is DENIED.

4.     **On or before February 1, 2017,** the State Official Defendants (Defendants Charles Ward, Stephen T. Marshall, D. T. Marshall, in their official capacities[20]) shall deliver to Attorney McGuire $82,417.00, representing a reasonable interim attorney's fee for Mr. McGuire's work in obtaining the relief afforded by the February 5, 2015 Judgment.  This figure does not reflect fees on appeal.

5.     Plaintiff may file a motion for costs and additional attorney's fees, including the EJUL attorneys' fees, attorneys' fees reasonably incurred with respect claims on which Plaintiff may prevail on appeal, fees and costs incurred after entry of the judgment, and any other appropriate attorneys' fees and costs, **no later than fourteen days** after entry of the mandate by the Court of Appeals on the pending appeal.

DONE this 5th day of January, 2018.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

---

[20] (*See* Doc. # 283 at 15 ("Mr. McGuire's lawsuit proceeds only as to his § 1983 claims seeking to enjoin the State Officials in their official capacities from continuing to enforce an allegedly *ex post facto* law and for corresponding declaratory relief.").